# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

**KENYATTA LYNN MOONEY**                                                    **PLAINTIFF**

**V.**                                                          **NO. 3:16-CV-00010-DMB-RP**

**JIMMY GRAY CHEVROLET, INC.,**
**and JOHN DOES 1-10**                                                     **DEFENDANTS**

## ORDER GRANTING MOTION TO COMPEL ARBITRATION

Before the Court is Jimmy Gray Chevrolet, Inc.'s motion to compel arbitration. Doc. #8. Because the parties entered into a valid arbitration agreement which, among other things, reserves the issue of arbitrability for arbitration, the motion will be granted.

## I
## Factual Allegations and Procedural Background

### A. Relevant Allegations

Jimmy Gray Chevrolet, Inc. ("Gray Chevrolet") is an automotive dealership located in Southaven, Mississippi. Doc. #1 at ¶ 5. On April 8, 2015, Kenyatta Mooney contacted Grant Boyland, one of Gray Chevrolet's employees, via Facebook Messenger, expressing her interest in purchasing a new car. *Id*. at ¶¶ 6, 8–10. On May 12, 2015, after Mooney provided Boyland with certain information he requested,[1] Boyland informed Mooney that she had been pre-approved for a 2015 maroon Chevy Malibu. *Id*. at ¶ 17–19. Mooney informed Boyland that she needed a few more weeks to procure the down payment and, on May 27, 2015, advised Boyland that she had done so. *Id*. at ¶¶ 20–21.

On June 2, 2015, after Boyland assured her financing had been approved, Mooney went to Gray Chevrolet to pick up the new car. *Id*. at ¶ 22–23. There, she signed a "Retail Installment

---

[1] Mooney provided Boyland with her birthdate, age, social security number, and a copy of her pay stubs. Doc. #1 at ¶¶ 10–11.

Sale Contract – Simple Finance Charge (with Arbitration Provision)" ("Sale Contract"), received the car keys, and drove the car off the lot. *Id.* at ¶¶ 24–25; Doc. #1-1.

The Sale Contract signed by Mooney includes the following relevant provisions:

**Agreement to Arbitrate**: By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate. …

**You agree to the terms of this contract and any dispute resolution agreement you signed with this contract. You confirm that before you signed this contract and any dispute resolution agreement, we gave them to you, and you were free to take them and review them. You acknowledge that you have read both sides of this contract, including the arbitration provision on the reverse side, before signing below.** …

**ARBITRATION PROVISION**
**PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS**
1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLAIM YOU MAY HAVE AGAINST US ….**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE MAY HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of vehicle, this contract or any resulting transaction or relationship … shall, at your or our election, be resolved by neutral binding arbitration and not by a court action. … Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief.

Doc. #1-1; Doc. #8-1 at 2, 4.[2]

---

[2] The copy of the Sale Contract which Mooney attached to her complaint does not include its reverse side, which contains the excerpts from the Arbitration Provision quoted above. The reverse side is included in the copy of the

On June 12, 2015, after receiving a check from Gray Chevrolet for state dealer taxes, registering the Malibu in her name, and receiving a thank you letter from Gray Chevrolet, Mooney received a text message from Boyland stating "that the finance company returned her contract." Doc. #1 at ¶¶ 27–28, 30–31, 33. Three days later, Mooney returned to the dealership and spoke with the finance manager, who asked Mooney to return the copy of the signed contract "in order to do another deal," informing her that if she did not return all paperwork, she would forfeit her down payment. *Id*. at ¶¶ 38–39, 44, 46, 48–49. Mooney refused to return the contract and told the finance manager she was leaving to contact her attorney. *Id*. at ¶¶ 46–47, 49. Within minutes of Mooney leaving the dealership, "Defendants" reported the car as stolen to the Southaven Police Department and OnStar Vehicle Security Company. *Id*. at ¶ 56. As a result, Mooney was arrested and charged with felony theft of a motor vehicle. *Id*. at ¶¶ 62, 69.

### B. This Action

On January 8, 2016, Mooney filed a complaint in this Court[3] against Gray Chevrolet and John Does 1-10 "in their individual and employment capacities," seeking compensatory and

---

Sale Contract Gray Chevrolet attached to its motion to compel. Doc. #8–1 at 4. Mooney asserts that the Sale Contract attached to her complaint is the copy Gray Chevrolet gave her and "objects to any alternate copies via Federal Rule of Evidence 901-Authentication." Doc. #13 at 2 & n.3. Mooney also asserts that she did not "conveniently [omit] the reverse side of the contract" as Gray Chevrolet suggests but that the omission was an unintentional error due to the provision's "location and size," which evidences unconscionability. *Id*. at 3 n.5. Mooney, however, does not dispute the existence or the contents of the reverse side, does not argue that it is not part of the Sale Contract, and has not moved to strike it. Indeed, Mooney's opposition to the motion to compel is premised on the alleged unconscionability and waiver of a provision on the Sale Contract's reverse side. As such, the Court overrules Mooney's authentication objection. *See generally In re Interstate Steel Setters, Inc.*, 65 B.R. 312, 316 (Bankr. N.D. Ill. 1986) (objections to exhibits' authenticity not made in good faith when counsel "knew all along that the documents were copies of authentic documents of his client but simply forced Plaintiff to prove it").

[3] Mooney's complaint, which did not allege a specific amount in controversy, alleged that this Court "has jurisdiction of this action pursuant to 28 U.S.C. § 1332," and that she is a resident of the state of Arkansas and Gray Chevrolet is a Mississippi corporation with its principal place of business in Mississippi. Doc. #1 at ¶¶ 1–2, 4. It is not enough to allege residency for diversity jurisdiction. *See Preston v. Tenet Healthsystem Mem'l Med. Ctr.*, 485 F.3d 793, 798 (5th Cir. 2007) ("A party's residence in a state alone does not establish domicile."). Accordingly, the Court ordered Mooney to show cause why her complaint should not be dismissed due the absence of diversity jurisdiction. Doc. #15. Mooney's response to the show cause order sufficiently established Mooney's citizenship. Doc. #16; Doc. #17. However, the Court issued a second show cause regarding the amount in controversy. Doc. #18. Mooney's response to the second show cause indicates that the amount in controversy has been met, though a close call. Doc. #19.

punitive damages under ten theories of liability: malicious prosecution (Count 1), negligence (Count 2), gross negligence (Count 3), intentional infliction of emotional distress (Count 4), defamation (Count 5), civil conspiracy (Count 6), civil assault and battery (Count 7), false arrest/false imprisonment (Count 8), abuse of process (Count 9), and breach of contract (Count 10). Doc. #1. On February 10, 2016, Gray Chevrolet filed its answer, asserting, among other things, the defense that Mooney's claims must be arbitrated. Doc. #4 at 1.

On March 3, 2016, Gray Chevrolet filed a motion to compel arbitration with a supporting memorandum. Doc. #8; Doc. #9. That day, United States Magistrate Judge S. Allan Alexander issued an order staying this case "pending a ruling on the motion to compel arbitration." Doc. #10. On March 28, 2016, Mooney filed a response to the motion to compel,[4] Doc. #13; and on April 7, 2016, Gray Chevrolet filed a timely reply, Doc #14.

## II
## Analysis

In its motion to compel, Gray Chevrolet argues that the Court should compel arbitration because the Sale Contract contains a valid arbitration provision. Doc. #8 at ¶¶ 1–5. In its supporting memorandum, Gray Chevrolet further argues that both parties "unequivocally contracted to reserve the issue of arbitrability for the arbitrator, not a court." Doc. #9 at 7. Gray Chevrolet contends that the reservation of arbitrability is evidenced by the delegation provision in the Sale Contract, which states that "[a]ny claim or dispute … including the interpretation and scope of the Arbitration Provision, and the arbitrability of the claim or dispute … shall … be resolved by neutral binding arbitration and not by a court action." *Id*.; Doc. #8–1 at 4. Gray Chevrolet requests that the Court enter a final judgment of dismissal terminating this litigation and enjoining Mooney from attempting to judicially prosecute any claims against it until after

---

[4] On March 17, 2016, Mooney filed an unopposed motion for an extension to file her response and was granted until March 28, 2016, to respond. Doc. #11; Doc. #12.

arbitration is concluded and confirmed. Doc. #8 at 1.

In response, Mooney does not dispute that she entered an agreement to arbitrate; but argues that "the agreement to arbitrate arbitrability is invalid because 1) it is procedurally and substantively unconscionable, and 2) Defendant has waived its right to enforce said provision. Therefore, … the question of arbitrability is for the district court."[5] Doc. #13 at 1. Gray Chevrolet replies that, because Mooney did not specifically attack the provision reserving the issue of arbitrability to the arbitrator, the validity of such provision is for the arbitrator to decide, not the Court. Doc. #14 at 1–2.

### A. Federal Arbitration Act

The Federal Arbitration Act ("FAA") "permits an aggrieved party to file a motion to compel arbitration when an opposing party has failed, neglected, or refused to comply with an arbitration agreement." *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 493 (5th Cir. 2005) (internal quotation marks omitted) (citing 9 U.S.C. § 4). The FAA "places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). Like other contracts, "the interpretation of an arbitration agreement is generally a matter for state law." *Aviles v. Russell Stover Candies, Inc.*, 559 F. App'x 413, 414 (5th Cir. 2014) (quoting *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010)). Accordingly, an agreement to arbitrate may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Ctr., W., Inc.*

---

[5] Mooney also requested an evidentiary hearing and/or discovery. Doc. #13 at 18. A district court may make a determination on a paper record when "the evidentiary record reveals no genuine issue of material fact." *Dalon v. Ruleville Nursing & Rehab. Ctr., LLC*, 161 F. Supp. 3d 406, 411 (N.D. Miss. 2016); *see Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014) ("When it's apparent from a quick look at the case that no material disputes of fact exist it may be permissible and efficient for a district court to decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration."). After reviewing the issues and documents presented in the motion, the arguments made, and the relevant authorities, the Court finds that it is able to reach a determination on the paper record. Thus, neither an evidentiary hearing nor discovery is necessary.

*v. Jackson*, 561 U.S. 63, 68 (2010).

Here, the arbitration agreement contains a delegation provision reserving the threshold issue of arbitrability to an arbitrator. A delegation provision "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Ctr.*, 561 U.S. at 70. Unless a party "challenge[s] the delegation provision specifically, [a court] must treat it as valid ... and must enforce it[,] ... leaving any challenge to the validity of the [arbitration a]greement as a whole for the arbitrator."[6] *Id.* at 72; *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1144 (11th Cir. 2015) (citing *Rent-A-Ctr.*, 561 U.S. at 72) (when delegation provision challenged, "the courts only retain jurisdiction to review a challenge to that *specific* provision") (emphasis added).

## B. Delegation Provision

As mentioned above, when the issue is who has the power to determine arbitrability and a delegation provision is present, the challenging party must *specifically* attack the delegation provision. *See Rent-A-Ctr.*, 561 U.S. at 72 ("Jackson challenged only the validity of the contract as a whole. Nowhere in his opposition to Rent-A-Center's motion to compel arbitration did he

---

[6] The Court acknowledges that in a recent case, the Fifth Circuit held that "if a party asserts that an arbitration agreement contains a delegation clause, this court only asks (1) whether the parties entered into a valid arbitration agreement and, if so, (2) whether the agreement contains a valid delegation clause." *Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 378 (5th Cir. 2016) (citing *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201–02 (5th Cir. 2016)). This statement of law appears inconsistent with the cited authority which held that "if the party seeking arbitration points to a purported delegation clause, the court's analysis is limited. It performs the first step—an analysis of contract formation—as it always does. But the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Kubala*, 830 F.3d at 202. More importantly, the focus on the enforceability of the agreement as a whole runs contrary to *Rent-A-Center*'s dictate that a valid delegation clause requires a court to leave "any challenge to the validity of the [arbitration a]greement as a whole for the arbitrator." 561 U.S. at 72. Accordingly, *Reyna* is not binding precedent to the extent it holds that a court analyzing a delegation clause must first decide whether the parties entered into a valid arbitration agreement. *See Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 338 (5th Cir. 1999) ("To the extent it holds otherwise, Burks is not the binding law of this circuit, because it directly conflicts with both our precedent and Supreme Court precedent.").

even mention the delegation provision."). Gray Chevrolet contends that Mooney's challenges go "to the entirety of the Arbitration Provision" and do not, therefore, raise "specific and independent" challenges to the delegation clause itself."[7] Doc. #14 at 1, 4.

There appears to be little authority involving a party who successfully challenged a delegation provision. Thus, guidance as to what constitutes a "specific challenge" to a delegation provision is limited. The United States Supreme Court stated in *Rent-A-Center* that "it may be that had Jackson challenged the delegation provision by arguing that these common procedures *as applied* to the delegation provision rendered *that provision* unconscionable, the challenge should have been considered by the court." 561 U.S. at 74 (emphases in original). Considering such, the Court finds that a party seeking to challenge the validity of a delegation provision should expressly direct her arguments towards the delegation clause itself. The Court therefore will consider only those arguments by Mooney which Mooney offers to specifically challenge the delegation provision.

While Mooney makes a number of arguments in opposing arbitration, her arguments essentially fall into two categories: (1) Gray Chevrolet waived its right to arbitrate by initiating criminal proceedings against her, and (2) the delegation clause should not be enforced because it is procedurally and substantively unconscionable.

### 1. Waiver

Mooney argues that the delegation provision is invalid because Gray Chevrolet waived its right to enforce the delegation provision when it invoked criminal theft proceedings against her.

---

[7] The delegation provision in this case is severable from the arbitration agreement contained in the Sale Contract. *See Rent-A-Ctr.*, 561 U.S. at 70–72 (agreements to arbitrate, including delegation clauses, are severable from remainder of contract). Therefore, it is inevitable that some of the challenges to the delegation clause could overlap with those challenging the contract as a whole. That does not mean, however, that the delegation provision can be attacked with an argument that is *solely* related to the arbitration agreement or the contract as a whole; the argument must be applicable to the delegation clause. *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214–15 (5th Cir. 2003) (under "separability doctrine," defense must relate *specifically* to agreement in question).

Doc. #13 at 13–18. Specifically, Mooney contends that by Gray Chevrolet's conduct of "submitting the dispute to authorities, and swearing to an affidavit before a clerk of court, it did not intend to be bound by the delegation provision." *Id.* at 16.

"The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of *waiver*, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) (emphasis added). The issue of waiver as expressed by Mooney, however, is a "doubt concerning the scope of arbitrable issues and is a defense to arbitrability as a whole, rather than a specific challenge to the delegation clause." *Chatman v. Jimmy Gray Chevrolet, Inc.*, No. 3:16-cv-009, 2016 WL 5745697, at *4 (N.D. Miss. Sept. 30, 2016) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)) (internal brackets and quotation marks deleted); *see Chatman v. Jimmy Gray Chevrolet, Inc.*, No. 316-cv-8, 2016 WL 4975044, at *6 (N.D. Miss. Sept. 12, 2016)). Thus, Mooney may not rely on her waiver argument to specifically attack the delegation provision.

### 2. Unconscionability

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally … should apply ordinary state-law principles that govern the formation of contracts." *First Options*, 514 U.S. at 944. The parties represent, and the Court agrees, that Mississippi law governs the interpretation of the delegation provision in the Sale Contract.[8]

---

[8] The Sale Contract provides that "[f]ederal law and the law of the state of our address shown on the front of this contract apply to this contract," which state here is Mississippi. Doc. #8-1 at 1, 3. Generally, Mississippi courts will enforce a choice of law provision unless:

Under Mississippi law, "the usual defenses to a contract such as fraud, *unconscionability*, duress, and lack of consideration may be applied to invalidate an arbitration agreement, so long as the law under which the provision is invalidated is not applicable only to arbitration provisions." *E. Ford, Inc. v. Taylor*, 826 So.2d 709, 714 (Miss. 2002) (emphasis added). "Unconscionability has been defined as an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party." *Id.* at 715 (internal quotation marks omitted). "The unconscionability of [a] contract ... is to be determined under the circumstances as they existed at the time the contract was made." *Pridgen v. Green Tree Fin. Servicing Corp.*, 88 F. Supp. 2d 655, 657 (S.D. Miss. 2000).

Mississippi courts recognize "two types of unconscionability, procedural and substantive." *Id.* (quoting *York v. Ga.–Pac. Corp.*, 585 F.Supp. 1265, 1278 (N.D. Miss. 1984). Mooney alleges that the delegation provision at issue is both procedurally and substantively unconscionable. Doc. #13 at 6.

### a. Procedural Unconscionability

"Procedural unconscionability can be shown by: (1) lack of knowledge; (2) lack of voluntariness; (3) inconspicuous print; (4) the use of complex, legalistic language; (5) disparity in sophistication or bargaining power of the parties; and/or (6) lack of opportunity to study the contract and inquire about the terms." *Caplin Enters., Inc. v. Arrington*, 145 So.3d 608, 614 (Miss. 2014). "A lack of knowledge is demonstrated by a lack of understanding of the contract

---

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which ... would be the state of the applicable law in the absence of an effective choice of law by the parties.

*PIC Grp., Inc. v. LandCoast Insulation, Inc.*, 718 F. Supp. 2d 795, 799–800 (S.D. Miss. 2010) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2) (1971)). The exceptions to enforcement of the parties' choice of law in this case do not apply; as such, Mississippi law governs this dispute.

terms arising from inconspicuous print or the use of complex legalistic language, disparity in sophistication of parties, and lack of opportunity to study the contract and inquire about contract terms." *Dalon*, 161 F. Supp. 3d at 416 (emphasis omitted) (quoting *E. Ford, Inc.*, 826 So.2d at 715–16). A lack of voluntariness is most strongly shown "in contracts of adhesion when there is a great imbalance in the parties' relative bargaining power, the stronger party's terms are unnegotiable, and the weaker party is prevented by market factors, timing or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all."[9] *E. Ford, Inc.*, 826 So.2d at 716 (quoting *Bank of Ind., Nat'l. Ass'n v. Holyfield*, 476 F. Supp. 104, 110 (S.D. Miss. 1979)). Thus, "[t]he indicators of procedural unconscionability generally fall into two areas: (1) lack of knowledge, and (2) lack of voluntariness." *Bank of Ind., Nat'l. Ass'n*, 476 F. Supp. at 109; *Entergy Mississippi, Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207 (Miss. 1998). Mooney alleges that all of the factors weigh in favor of procedural unconscionability with respect to the delegation clause. Doc. #13 at 8–13.

*i. Lack of knowledge*

Mooney argues that, because she has only some high school education and a GED, she did not understand that an arbitration agreement could be different from an agreement to arbitrate arbitrability. Doc. #13 at 9–10. Mooney contends that "she … would have never agreed to a [delegation] provision if she fully understood the agreement would be a complete forfeiture of her right to a judicial forum." *Id*. Mooney also argues that the location of the delegation provision renders the provision unconscionable because it is on the reverse side of the contract, "separate and apart" from the two other provisions regarding arbitration she signed. *Id*. at 10–11.

---

[9] "A contract of adhesion has been described as one that is drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms." *E. Ford, Inc.*, 826 So.2d at 716 (internal quotation marks omitted).

She contends that not only is the delegation provision on the reverse side of the Sale Contract but it is "in inconspicuous print underneath larger, bolded print … in parentheses at the very bottom of the page, in extremely small print, with substantially different and new agreement terms" and that the "parentheses subtracted and camouflaged the extreme importance [she] should have given to [it]." *Id*. at 11 (internal punctuation omitted). Further, Mooney argues that Gray Chevrolet "did not read the [delegation] provision to [her] or draw her attention to it [nor] did [it] inform [her that] she should contact an attorney before signing said provision so that counsel could explain the legal terms 'arbitrability' or what 'scope and interpretation' entailed." *Id.* at 12. According to Mooney, the signature box of the Agreement to Arbitrate "does not refer to the question of arbitrability, scope or interpretation." *Id.* at 11.

"In Mississippi, a person is charged with knowing the contents of any document that [she] executes." *Russell v. Performance Toyota, Inc.*, 826 So.2d 719, 726 (Miss. 2002) (citing *J.R. Watkins Co. v. Runnels*, 172 So.2d 567, 571 (Miss. 1965)). A "lack of education and inability to read or understand the agreement" cannot render a delegation clause procedurally unconscionable. *See Cleveland v. Mann*, 942 So.2d 108, 114 (Miss. 2006) (inability to read did not render party incapable of possessing adequate knowledge of arbitration agreement party signed). Further, "[a] person cannot avoid a written contract which he has entered into on the ground that he did not read it or have it read to him ... unless he was induced not to read it or have it read to him by fraudulent representations made to him by the other party, on which he was entitled to rely." *J. R. Watkins Co.*, 172 So.2d at 571 (quoting *Cont'l Jewelry Co. v. Joseph*, 105 So. 639, 639 (1925)). Mooney therefore had a duty to read the Sale Contract, including the delegation provision, in its entirety. Her failure to satisfy this duty cannot serve as a basis to invalidate the delegation clause on unconscionability grounds. *See id*. ("[T]he sureties were

11

distinctly charged with knowledge of the terms of the contract which they signed, and if they failed to read the contract before signing it, they have only themselves to blame, and cannot avail of their negligence in that regard.").

Mooney's arguments that the location of the delegation provision attributed to her lack of knowledge, and that she was not informed that she could take the Sale Contract to an attorney, are also without merit. Mooney signed her name below the Sale Contract's Agreement to Arbitrate provision, which twice referenced the Arbitration Provision *on the reverse side*. Doc. #8-1 at 2. She then signed her name below the following bolded provision: "You confirm that before you signed this contract and any dispute resolution agreement, we gave them to you, and you were *free to take them and review them*. You acknowledge that you read both sides of this contract, including the arbitration provision *on the reverse side,* before signing below." *Id.* (emphases added). After examining the Arbitration Provision on the reverse side of the Sale Contract, the Court finds that the delegation provision explicitly delegates the issue of arbitrability to an arbitrator. The delegation provision is found within the first sentence below bolded print and in conspicuous plain language that clearly "includ[es] … the arbitrability of the claim or dispute" as that to "be resolved by neutral binding arbitration and not by a court action." *Id*. at 4. The Court finds, therefore, that the factors of lack of knowledge; inconspicuous print; the use of complex, legalistic language; and lack of opportunity to study the contract and inquire about the terms, weigh against Mooney.

*ii. Voluntariness*

In claiming procedural unconscionability, Mooney argues that: (1) there was a disparity in sophistication, (2) Gray Chevrolet assured her that it could do what many other dealerships could not, (3) Gray Chevrolet constantly asked her if she was going to purchase a vehicle from

its dealership, (4) Gray Chevrolet dismissed her questions about the car buying process, and (5) Gray Chevrolet did not inform her that she could postpone signing the Sale Contract. Doc. #13 at 8–10. Mooney also contends that, because at the time she entered into the Sale Contract she was four years out of bankruptcy, on her job only nine months, and made only $12.08 per hour, she "believed Defendant was the only way she could obtain a vehicle due to her financial circumstances." *Id*. at 8–9.

As noted above, lack of voluntariness is most strongly shown in contracts of adhesion. However, even if the Court construed the Sale Contract to be a contract of adhesion, this alone would not automatically render the delegation clause procedurally unconscionable. *See E. Ford, Inc.*, 826 So.2d at 716 ("The fact that [a delegation provision] is included in a contract of adhesion renders the agreement procedurally unconscionable only where the stronger party's terms are unnegotiable and the weaker party is prevented by market factors, timing or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all."). Further, although the Court does find it probable that Mooney was less sophisticated than Gray Chevrolet when she signed the Sale Contract, it does not find that she has shown a true disparity in bargaining power. *See MS Credit Ctr., Inc. v. Horton*, 926 So.2d 167, 179 (Miss. 2006) (that borrower is "less sophisticated" than lender, standing alone, does not establish disparity in parties' sophistication or bargaining power). Mooney has failed to show that she was coerced into signing the contract or that she was limited by time constraints, and she does not contend she attempted to bargain for a contract that did not contain a delegation provision or that she even attempted to ask for more time in signing the contract. As mentioned above, Mooney signed a provision acknowledging that she was free to take the contract with her; thus, her argument that Gray Chevrolet did not inform her that she could postpone signing the

13

agreement is unconvincing. For all of these reasons, the factors of lack of voluntariness and disparity in sophistication or bargaining power of the parties weigh against Mooney. In sum, Mooney has failed to show that the delegation provision is procedurally unconscionable.

### b. Substantive Unconsciousability

"Substantive unconscionability may be found when the terms of [a] contract are of such an oppressive character as to be unconscionable." *See Russell*, 826 So.2d at 725. It can also be "proven by oppressive contract terms such that there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party's nonperformance or breach." *Caplin Enters., Inc.*, 145 So.3d at 614 (internal quotation marks omitted). However, "[i]t is not necessary that arbitration agreements contain mutual promises that give the parties identical rights and obligations, or that the parties must be bound in the exact same manner." *See id.* (internal quotation marks omitted). In order to determine if substantive unconscionability exists, a court must look to the four corners of the agreement. *Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds ex rel. Braddock*, 14 So.3d 695, 699 (Miss. 2009).

Mooney argues that the delegation provision "is severely one-sided" and that "only she is required to arbitrate the question of arbitrability." Doc. #13 at 13. She also argues that the delegation provision "does not include any actions or inactions by the Defendant." *Id.* However, these arguments are negated by the express language of the sentence which includes the delegation provision:

> Any claim or dispute … (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute) between you and us … which arises out of or relates to your credit application, purchase … of this vehicle, ... this contract or any resulting transaction or relationship ... shall, *at your or our election*, be resolved by … binding arbitration.

14

Doc. #8–1 at 4 (emphasis added). Therefore, the option to elect arbitration, including the right to arbitrate arbitrability, is equally binding upon Gray Chevrolet and Mooney. Thus, the Court does not find that the delegation provision is substantively unconscionable.

### 3. Summary

Because the Court finds that the delegation clause is valid, the issue of arbitrability must be decided by an arbitrator. Under 9 U.S.C. § 3, the Court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall … stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." Thus, Gray Chevrolet's request that this action be dismissed will be denied.

## III
## Conclusion

For the reasons above, Gray Chevrolet's motion to compel arbitration [8] is **GRANTED in Part and Denied in Part**. It is granted to the extent this case is **REFERRED** to arbitration for a determination of whether Mooney's claims are arbitrable.[10] It is denied to the extent that dismissal of this case was sought; rather, this case is **STAYED** pending the outcome of arbitration.

**SO ORDERED**, this 13th day of February, 2017.

/s/ Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[10] If the arbitrator determines that the claims are arbitrable, the claims shall proceed to arbitration.